E-FILED on   08/29/08

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| BOBBY G. JONES, | Civil No. C-05-05238 RMW |
|---|---|
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT |
| v. | |
| MICHAEL J. ASTRUE[1], Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Bobby Jones ("Plaintiff") seeks reversal of a decision by Defendant Commissioner of Social Security ("Commissioner") denying him disability insurance benefits.[2] Plaintiff and the Commissioner filed cross-motions for summary judgment. Plaintiff alleges that the findings of the ALJ regarding Plaintiff's ability to perform other work are unsupported by substantial evidence and were reached by improper application of law.

---

[1] Michael J. Astrue became Commissioner of the Social Security Administration on February 1, 2007. Pursuant to Ruled 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is hereby substituted for Jo Anne B. Barnhart as the Defendant in this matter.

[2] The challenged decision was rendered by Administrative Law Judge Brenton L. Rogozen ("the ALJ") on March 24, 2005. The ALJ's decision became final on October 14, 2005 when the Appeals Council of the Social Security Administration denied Plaintiff's request for administrative review of the ALJ's decision.

Pursuant to this Court's procedures for review of social security actions, the parties' motions have been submitted without oral argument. Based on the moving papers and the Court's own analysis of the record, the Court will grant Defendant's cross-motion for summary judgment and deny Plaintiff's motion for summary judgment or remand.

## I. BACKGROUND

**1. Claimant's Age, Education and Work Experience**

The following facts are taken from the March 24, 2005 ALJ decision and the accompanying administrative record ("AR"). Plaintiff was born on July 29, 1952 and was 52 years old at the time of the hearing. AR 266. Plaintiff has a high school education; his past work experience included employment as a cook, maintenance man, construction laborer and plasterer. AR 90-92, 266. Plaintiff had worked as a plasterer or maintenance man for at least fifteen years. AR 266. Plaintiff was injured while carrying buckets of asphalt while at work. AR 139. Plaintiff was treated that same day in Dominican Hospital's emergency department clinic, AR 141, and again at the same hospital in September 2003, AR 129-137, and in February 2004. AR 126-128. Plaintiff had been treated for back pain at the same hospital since before the onset date. AR 152-154. Plaintiff is morbidly obese. AR 209. Plaintiff alleges disability due to low back pain. AR 24.

Stephen Halpern, M.D., treated Plaintiff generally and for high blood pressure and other injuries since 1992. AR 255. In April 2004, Dr. Halpern had Plaintiff undergo an MRI study of his lumbar spine with neurosurgeon Rosemaria Gennuso, M.D. Dr. Gennuso reported mild bulges at L5-S1 and L4-5, without any frank rupture. She recommended "a conservative course and a weight reduction program," but did not recommend surgery. AR 200-01.

In June 2004, Plaintiff was seen by a social security disability insurance ("SSDI") evaluator and consultative examiner, Jennie Jet, M.D. Dr. Jet's report notes that Plaintiff reported that he "can lift 10 lbs limited by back pain, sit an hour, stand a half an hour, and walk 15-30 minutes." AR 205. Dr. Jet's report states that Plaintiff further reported that he was "able walk four blocks to the market, but by the time he is there, his back pain is quite significant. The walk back carrying the groceries is almost 'unbearable.'" AR 205  Dr. Jet's report states that Plaintiff's subjective complaints "seem consistent with his examination." AR 207. Regarding Plaintiff's medical history, Dr. Jet noted that

"[t]he patient's history and examination are consistent with chronic lumbosacral joint and disc disease likely exacerbated by the injury [he had at work]." AR 207. Dr. Jet stated that "[b]ecause of this patient's chronic lumbosacral back pain he should avoid heavy lifting, squatting, stooping, or prolonged sitting or standing." AR 207. However, Dr. Jet's report states that Plaintiff has "no limitations in his ability to speak, hear, communicate or perform tasks which require upper or lower extremity coordination, or lifting less that than 30 lb. at a time." AR 207. Further, Dr. Jet's report states that "[t]he patient does not require an assistive device." AR 207. Accordingly, Dr. Jet recommended "a short course of physical therapy to design and teach a home exercise program to strengthen his lumbosacral corset and decrease his low back pain." AR 207. Dr. Jet further recommended that Plaintiff "should lose weight and stop smoking to decrease the chronicity of his back pain." AR 207. Finally, Dr. Jet recommended that "[a] trial of lumbar traction would be in order to try to treat his back pain." AR 207.

In July 2004, state agency physician Dr. Gallagher conducted a residual functional capacity ("RFC") assessment. AR 209-216. Dr. Gallagher determined that Plaintiff can:

- lift and carry 20 lbs. frequently and twenty pounds occasionally;
- sit for six hours of an eight hour workday; and
- stand and/or walk for six hours of an eight hour work day.[3]

Dr. Gallagher also found Plaitniff could perform "occasional stooping, kneeling, crouching, and crawling." AR 211. Dr. Gallagher noted that Plaintiff's "allegations [are] somewhat greater than objective findings." AR 214. This report was confirmed by Dr. S. Battis, M.D. in July 2004. AR 26.

In a December 2004 letter to Plaintiff's attorney, Plaintiff's treating physician Dr. Halpern described Plaintiff's back condition as follows:

> The patient is still unable to work, due to continued pain and spasm, as well as a restriction in his ability to sit, stand, or walk for more than 15-20 minutes at a time. In addition, he must lie down for 10-20 minutes every two hours or so. He is functionally limited in his ability to work, especially in his prior occupation as a

---

[3] The ALJ's report and defendant's opposition claim Dr. Gallagher also found Jones could perform "occasional stooping, kneeling, crouching, and crawling." However, this statement does not seem to appear in Dr. Gallagher's questionnaire responses.

plasterer.  He has been totally disabled from working since his injury in June of 2003.

AR 255.  Dr. Halpern also submitted the Administration's questionnaire, "Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment." AR 256-57.  Dr. Halpern's responses state that Plaintiff was not capable of either sedentary or light work.  AR 256-57.

**2.   Procedural History**

On April 16, 2004, Plaintiff filed an Application for Disability Insurance Benefits under Title II of the Social Security Act.  AR 63-66.  In the application, Plaintiff alleged disability beginning June 30, 2003, due to low back pain.  AR 63, 81.  The application was denied initially by a Regional Commissioner in July 2004, and upon reconsideration in October 2004.  AR 34-38, 40-44.  At Plaintiff's request, AR 47, an ALJ held a hearing on February 17, 2005, with Plaintiff and his attorney present.  AR 263-305.  The ALJ concluded that although Plaintiff's impairments are "severe" within the meaning of the Regulations, they do not meet or medically equal the impairments listed in Appendix 1, Subpart P, Regulations No.4.  AR 30.  He further concluded that Plaintiff retains the ability to:

> lift and carry ten pounds frequently and twenty pounds occasionally; he is able to sit for six hours of an eight hour workday; he is able to stand, and/or walk for six hours of an eight hour workday; and, he is limited to occasional stooping, kneeling, crouching, squatting, and crawling.

AR 28.  The ALJ agreed with the vocational expert's opinion that Plaintiff has skills from past work, which are transferable to light work or unskilled sedentary positions that exist in the national economy.  AR 31.  The Appeals Council declined Plaintiff's request for administrative review, making the ALJ's decision the final decision of the Commissioner.  AR 4-6, 17-20.

Pursuant to 42 U.S.C. § 405(g), Plaintiff timely sought judicial review of the ALJ's decision by filing this appeal on December 19, 2005, and moves for summary judgment arguing that the court should award him benefits or, at least, remand the case.  The Commissioner's reply and cross-motion for summary judgment argues the ALJ properly evaluated the treating physician's opinion and Plaintiff's subjective pain allegations, and properly determined Plaintiff's RFC.

## II.  LEGAL STANDARD

### A.  Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision denying Plaintiff benefits.  The Commissioner's decision (here the decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance - it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the ALJ's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ.  *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

### B.  Standard for Determining Disability

A person is "disabled" for purposes of receiving social security benefits if he or she is unable to engage in any substantial gainful activity as a result of a physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  *Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).  Social Security disability cases are evaluated using a five-step, sequential evaluation process.  In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  *Id.*  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments which significantly limit the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied.  *Id.*  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the

Listing; if so, disability is conclusively presumed and benefits are awarded. *Id.* If the claimant's impairment or combination of impairments do not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient RFC[4] to perform his or her past work; if so, the claimant is not disabled and the claim is denied. *Id.* The plaintiff has the burden of proving that he or she is unable to perform past relevant work. *Drouin*, 966 F.2d at 1257. If the claimant meets this burden, a *prima facie* case of disability is established. The Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work;[5] the determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R.§§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *as amended* April 9, 1996; *Drouin*, 966 F.2d at 1257.

### III.  DISCUSSION

Plaintiff seeks summary judgment against the Commissioner for an award of benefits or remand for additional evidence and adjudication. Mot. at 1. Plaintiff asserts that: (1) the ALJ improperly rejected the opinions from a treating physician; (2) the ALJ improperly discounted Plaintiff's symptom-reporting; and (3) the ALJ's finding as to Plaintiff's RFC was unsupported by substantial evidence, thereby calling into question the "unfavorable" determinative finding at step five. The Commissioner disagrees with each of these assertions.

**1.     Treating Physician's Opinion**

Plaintiff claims that the ALJ improperly rejected the opinion of his treating physician, Dr. Halpern. The Commissioner asserts that the ALJ provided legally sufficient reasons for declining to adopt Dr. Halpern's opinions.

Dr. Halpern opined that Plaintiff was not capable of either sedentary or light work. AR 256-57. Dr. Halpern further opined that Plaintiff must lie down three hours a day, could not sit for more

---

[4]     A claimant's RFC is what he or she can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[5]     There are two ways for the Commissioner to meet the burden of showing that there is other work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

than three hours, stand for more than two hours, or walk for more than one hour a day, could lift no more than 15 pounds a day for one hour only; and was limited to a maximum of one hour of reaching, handling, stooping, kneeling, and bending during the day.  AR 27, 255-62.

The ALJ accorded less weight to Dr. Halpern's opinions for the following reasons:

> [Dr. Halpern's opinions] are not consistent with the medical record as a whole or with the doctor's own examination and treatment notes.  The objective laboratory reports and X-rays in this matter are not consistent with the extremely reduced level of activity described by the doctor.  It is noted that the record does not indicate any prescription for the level of pain killers that might be expected with a person so immobilized by pain, and there is no evidence in the record to indicate that the doctor has recommended surgical intervention.  This is inconsistent with the level of incapacity in the doctor's opinion.  On the whole, the doctor appears to have accepted the claimant's subjective complaints, and the above-noted opinions appear reflective of a position of 'advocate' for the patient."

AR 27.

Greater weight usually is given to the opinion of a treating physician.  *Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992)).  However, a treating physician's opinion is not always binding, and in the case of a conflict, the ALJ must give specific, legitimate reasons" for disregarding a treating physician's opinion."  *Id.*

Here, the record shows that the ALJ carefully considered Dr. Halpern's findings and conclusions.  The ALJ observed that Dr. Halpern's opinions were not consistent with the medical evidence.  For example, at the request of Dr. Halpern, Plaintiff had a MRI scan done of his lower back.  AR 200.  The results of the MRI showed mild bulges only.  AR 26; 201.  Thus, the doctor reviewing the MRI recommended to Dr. Halpern a conservative course of treatment for Plaintiff and a weight reduction program.  AR 26; 201.  This doctor noted that Plaintiff was taking "Norco 10.325 every for to six hours for pain.  He has, in the past, tried Vicodin and muscle relaxants but does not recall a course of anti-inflammatories."  AR 200.  Dr. Halpern noted that the doctor reviewing the MRI thought that surgery would not help Plaintiff.  AR 255.  The ALJ specifically noted that this objective evidence contradicted Dr. Halpern's above-noted opinions.  Further, the ALJ noted that the letter and accompanying form from Dr. Halpern to Plaintiff's attorney appears to be reporting Plaintiff's subjective complaints because the objective evidence does not support the

doctor's opinions. Finally, the ALJ noted that these opinions contradict Dr. Halpern's own treatment notes, in that it appears from the record that Dr. Halpern's treatment of Plaintiff consists of prescribing pain killers following the accident, and recommending an MRI in 2004. AR 27; 200-201. Dr. Halpern did not recommend any follow-up treatment. Accordingly, the Court concludes that the ALJ adequately explained his reasons for giving little weight to the treating physician's opinion.

**2. Plaintiff's Subjective Pain Complaints**

The ALJ may reject a claimant's subjective complaints if "sufficiently specific" findings support such a conclusion. *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991). Where there is no affirmative evidence of malingering, the ALJ may reject the testimony for "clear and convincing reasons." *Reddick v. Charter*, 157 F.3d 715, 722 (9th Cir. 1998). In the instant case, Plaintiff argues that the ALJ erred in his determination that the medical evidence does not support Plaintiff's self-described limitations. The Commissioner contends that the ALJ properly articulated valid reasons for rejecting Plaintiff's subjective complaints of severe pain.

In his decision, the ALJ noted:

> The undersigned has considered the claimant's allegations of disabling pain and limitation pursuant to Social Security Ruling 96-7p and the Regulations (20 CFR § 404.1529 and 20 CFR § 416.929). However after carefully considering all of the medical and documentary evidence, the undersigned finds that there are discrepancies between the claimant's assertions and the degree of medical treatment (including medications) sought and obtained, the diagnostic tests and findings made on examination, and the level of follow-up treatment, including diagnostic testing, ordered by the treating physicians.

AR 27.

As discussed above, the ALJ made specific, well-supported findings with respect to Plaintiff's subjective complaints. The ALJ found specifically that Plaintiff's claimed level of pain was not supported by the evidence. AR 27. This evidence includes the MRI results discussed above as well as the reports from Dr. Jet and Dr. Gallagher, and Plaintiff's conservative treatment for his disability.

The ALJ is in a unique position to review all of the evidence and observe the Plaintiff in person. Where, as here, the ALJ provided specific and clear and convincing reasons for rejecting a

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT—C-05-05238 RMW
JSS                                              8

Plaintiff's testimony, it is well within his province to do so. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (holding that when there is objective medical evidence of an underlying impairment and no evidence of malingering, the ALJ must state specific, clear and convincing reasons for rejecting a claimant's subjective pain testimony).

**3.     Plaintiff's RFC Determination**

The ALJ made the following assessment of Plaintiff's RFC:

> [T]he undersigned finds the [Plaintiff] retains the following residual functional capacity: he is able to lift and carry ten pounds frequently and twenty pounds occasionally; he is able to sit for six hours of an eight hour workday; he is able to stand, and/or walk for six hours of an eight hour workday; and, he is limited to occasional stooping, kneeling, crouching, squatting, and crawling.

AR 28.

Plaintiff's first argument with respect to the ALJ's assessment of his RFC is that, had Dr. Halpern's opinion not been rejected, it would have established a lesser RFC than that found by the ALJ. Mot. at 9. In light of the Court's conclusion that the ALJ did not improperly discount evidence in the ways Plaintiff has alleged, this argument lacks merit.

Plaintiff also argues that the ALJ improperly rejected the opinion of an examining physician, Jenni Jet, M.D. Dr. Jet examined Plaintiff in June 2004 for the Disability Determination Service ("DDS"). The ALJ describes Dr. Jet's report as follows:

> The doctor noted that the claimant is 5'7" tall, weighing at least 240 pounds. The doctor diagnosed chronic lumbosacral back pain consistent with degenerative joint and disc disease. The doctor noted that, in 1986, the claimant suffered a right upper lumbar back injury (muscular in nature) which required a year of Workers Compensation treatments and absence from the job. The doctor opines that the claimant should avoid heaving lifting, squatting, and stooping; he should avoid prolonged sitting or standing; and he is able to lift less that thirty pounds at a time.

AR 26

The ALJ's discussion accurately reflects the contents of Dr. Jet's report found in the medical record. AR 204-208. Plaintiff argues that this report's finding that Plaintiff should avoid "prolonged" sitting or standing is inconsistent with the ALJ's conclusion that Plaintiff "is able to sit for six hours of an eight hour workday" and that "he is able to stand, and/or walk for six hours of an eight hour workday." AR 28; *see* AR 207. In the report, Dr. Jet did not state how long Plaintiff could sit or stand at one time, or define "prolonged." Dr. Jet did indicate that Plaintiff sat

comfortably for more than thirty minutes during the examination. AR 207. Further, Dr. Jet's recommendation states that Plaintiff has "*no limitations* in his ability to speak, hear, communicate or perform tasks which require upper or lower extremity coordination, or lifting less that than 30 lb. at a time." AR 207 (emphasis added).

While Dr. Jet's report does not indicate a certain amount of time that was meant by the recommendation that Plaintiff avoid "prolonged sitting or standing", the medical record does contain evidence submitted by Dr. Gallagher and affirmed by Dr. Battis on this issue. The ALJ describes Dr. Gallagher's report as follows:

> In a July 2004 Residual Physical Functional Capacity Assessment, Edward Gallagher, M.D., a reviewing physician for the DDS, opines that claimant is able to lift and carry ten pounds frequently and twenty pounds occasionally; he is able to sit for six hours of an eight hour workday; he is able to stand, and/or walk for six hours of an eight hour workday; and he is limited to occasional stooping, kneeling, crouching, and crawling. This opinion was affirmed by S. Battis, M.D., in July 2004.

AR 26. Thus, the medical record evidence supports the ALJ's RFC determination.

Additionally, the vocational expert identified jobs that Plaintiff could perform at a light exertional level, as well as jobs that Plaintiff could perform at a sedentary level, even if the person required a sit/stand option. AR 29. Thus, the vocational expert considered the ALJ's RFC and a lesser RFC. As such, Plaintiff's arguments do not compel a different result.

## IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED. The clerk shall enter judgment and close the file.

DATED:  August 29, 2008

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Defendant:**
Sara Winslow                    sara.winslow@usdoj.gov

**Counsel for Plaintiff:**
James Hunt Miller               jimillaw@rcn.com

**Dated:** 08/29/08                                    /s/JSS
                                              **Chambers of Judge Whyte**